## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## (EASTERN DIVISION)

| | |
|---|---|
| In re: | Chapter 11 |
| COSI, INC., *et al.,*[1] | Case No. 16- 13704 (MSH) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF ORDER GRANTING
### AUTHORITY TO CONTINUE TO USE CERTAIN PRE-PETITION
### BANK ACCOUNTS, CHECK STOCK AND EXISTING BUSINESS FORMS

Cosi, Inc. ("COSI"), Xando Cosi of Maryland, Inc. ("Xando"), Cosi Sandwich Bar, Inc.

("CSB"), Hearthstone Associates, LLC ("HALLC"), and Hearthstone Partners, LLC ("HPLLC";

collectively with COSI, Xando, CSB, and HALLC, the "Debtors"), the above-captioned debtors

and debtors-in-possession, hereby submit this motion (the "Motion") pursuant to sections 105(a)

and 363(c)(1) for an order ("Order") authorizing the Debtors to continue to use certain pre-petition

bank accounts, check stock and existing business forms and to maintain its existing cash

management system. In support of the Motion, the Debtors submit the *Declaration of Patrick

Bennett, Interim CEO and President of the Debtors, in Support of Chapter 11 Petition and First

Day Pleadings* (the "Bennett Declaration") and *Declaration of Edward Schatz, The O'Connor

Group, Inc., Acting Chief Financial Officer of the Debtors, in Support of Chapter 11 Petition and

First Day Pleadings* (the "Schatz Declaration"; together with the Bennett Declaration, the

"Declarations") and respectfully represent as follows:

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of the federal tax identification number for
each of the Debtors, are Cosi, Inc. (3745), Xando Cosi of Maryland, Inc. (2196), Cosi Sandwich Bar, Inc. (0910),
Hearthstone Associates, LLC (6267), and Hearthstone Partners, LLC (9433). The Debtors' corporate offices are
located at 294 Washington Street, Suite 510, Boston, MA 02108.

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Massachusetts (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 1579(b)(2).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are sections 105(a) and 363(c)(1) of the United States Code, 11 U.S.C. §§ 101 - 1532 (the "Bankruptcy Code").

## General Background

3.      On the date hereof (the "Petition Date"), the Debtors commenced the above-captioned chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court.

4.      The Debtors continue to operate their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date of this Motion, no trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases.

5.      Each of the Debtors has filed a Motion for Entry of an Order Directing Joint Administration of Related Chapter 11 Cases under the case of Debtor Cosi, Inc. (i.e., COSI).

6.      COSI is an international fast-casual restaurant company featuring its crackly-crust flatbread made fresh throughout the day and specializing in a variety of made-to-order hot and cold sandwiches, salads, bowls, breakfast wraps, "Squagels®" (square bagels), melts, soups, flatbread pizzas, S'mores, snacks, desserts, and a large offering of handcrafted, coffee-based, and specialty beverages.

7.      The Debtors' corporate offices are located in Boston, Massachusetts.

Client Matter/27288/1/A3468052.DOC[Ver:3]

8.     Prior to the Petition Date, there were approximately 107 COSI restaurants operating in the United States, the United Arab Emirates, and Costa Rica. Of the total restaurants, 72 locations were company-owned, while the remaining 35 locations were franchise-owned.

9.     Also prior to the Petition Date, the Debtors employed approximately 1,555 people, 82% of whom worked on a part-time basis. As of the end of the Company's fiscal second quarter of 2016 (i.e., as of June 27, 2016), the Debtors had consolidated net sales of $22.3 million, with net losses of approximately $3.1 million and cash on hand of approximately $3 million. Since the close of the Company's fiscal second quarter of 2016, sales have deteriorated further, losses have increased, and cash on hand has decreased to approximately $950,000 in the main operating account as of the Petition Date.

10.    The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the Declarations filed contemporaneously herewith and incorporated herein by reference.

### Relief Requested

11.    By this Motion, the Debtors are seeking authority to maintain their existing cash management system ("Cash Management System") and all existing accounts ("Accounts"), to continue using existing business forms and to continue their current investment practices.

12.    The Debtors operate on a fully consolidated basis. All receipts flow into the Debtors' main operating account (described below) and all operating expenses are paid from that main operating account.

### The Cash Management System

13.    The Debtors use a centralized Cash Management System to collect and transfer funds from and for, and to pay expenses incurred, by the Debtors.

3

## A.    Existing Cash Management System and Accounts.

14.    JPMorgan Chase Bank operates as the Debtors' central bank.  The central bank has a main operating account and six zero balance accounts (ZBAs) that are funded by the main operating account.  A flow chart illustrating the Debtors' accounts with JPMorgan Chase Bank is attached hereto as **Exhibit A**.

15.    The Debtors also have 10 regional depository bank accounts which are located in close proximity to each store to provide for timely daily deposits.

16.    The Debtors receive deposits from store sales, house accounts and franchisee royalties.  These funds are deposited into one of three depository zero balance accounts at JPMorgan Chase.  Deposits are made daily by the stores from the previous days transactions.  Store sales tendered by Visa, MasterCard, American Express and Discover are settled into the Merchant Card depository zero balance account and swept to the main operating account daily.  Monies deposited from the regional banks are swept directly into the main operating account bi-weekly.  House account deposits and franchisee royalty payments are deposited when received and funded directly into the main operating account.

17.    The Debtors maintain four (4) separate controlled disbursement zero balance accounts each related to payroll, manual payroll, utilities, and vendor accounts payable (includes rents and sales taxes) and funded by the main operating account.  Payroll taxes, garnishments, and 401k funds are pulled directly from the main operating account.

18.    All financial transactions are identified by different sequential numbers, tracked internally by the Debtors' accounting system and reconciled monthly.  All discrepancies are researched immediately and brought to management's attention if needed.

**B.**    **Intercompany Transfers.**

19.    The Debtors operate on a fully consolidated basis and, therefore, they do not record intercompany transfers in the ordinary course.  Although the debtors have the ability to "recreate" transfers between corporate entities, such exercise would be extremely time-consuming and potentially unnecessary.  The Debtors will consider at a later date whether to seek substantive consolidation of their estates.

**Basis for Relief Requested**

20.    The United States Trustee has established certain operating guidelines for debtors-in-possession in Chapter 11 cases, which include certain "bank account requirements".  See Office of the United States Trustee, Harrington, William K., Region I, Operating Guidelines and Reporting Requirements for Chapter 11 Cases, 11-12 (September 1, 2016).

21.    Among other requirements, the operating guidelines require debtors-in-possession to immediately close pre-petition bank accounts and deposit the funds into new debtor-in-possession bank account(s) (i.e., DIP accounts).  See id. at 11.  JPMorgan Chase Bank is an "authorized depository" pursuant to the list maintained by the U.S. Trustee.

22.    The United States Trustee has also established guidelines requiring that a debtor-in-possession modify its checks and business forms so that such forms contain a "debtor-in-possession" designation.  See Operating Guidelines at 11-12.  These requirements are designed (a) to provide a clear line of demarcation between pre-petition and post-petition transactions and operations; and (b) to block the inadvertent payment of pre-petition claims through the payment of checks drawn prior to the filing of a petition.

## Existing Cash Management Systems and Accounts

23.     The filing of the Chapter 11 Cases has the potential to place a substantial strain on the Debtors' relationships with suppliers, vendors and other creditors that are essential to the Debtors' continued operations.  The delays, confusion and disruption in operations that will result if the Debtors are required to substitute new debtor-in-possession bank accounts for all of their existing Accounts would only further strain these important relationships.  All parties-in-interest will be best served by preserving business continuity and avoiding operational and administrative paralysis that the closing of the bank accounts and opening of new ones may create.

24.     In view of the time delay and costs that would be involved in opening new accounts, it is imperative that the Debtors be permitted to continue using existing Accounts in order to avoid disruption to the normal operation of their business.  The Accounts are central to the Debtors' established Cash Management System.

25.     Further, while certain of the regional depository accounts are with banks which are not authorized as DIP institutions, as noted above, the balances in such accounts are manually swept by the Debtors often into the main operating account with JPMorgan Chase.  In addition, the Debtors make no payments or issue check from those regional depository accounts.

26.     The Debtors currently have in place record-keeping systems that ensure that all pre-petition and post-petition transactions are properly accounted for.  The Debtors are not seeking in this Motion general authority to pay checks issued pre-petition.[2]

27.     By this Motion, the Debtors are seeking authority to pay checks issued against existing Accounts post-petition, or as to which specific authority for payment has been granted pursuant to a separate order of this Court.  The Debtors have concurrently filed an application

---

[2]     In connection with the Debtors' motion requesting authority to pay pre-petition payroll obligations, the Debtors are requesting that the checks issued and outstanding to employees impacted by layoffs prior to the Petition Date be authorized to clear in the ordinary course.

6

herein requesting entry of an order authorizing the Debtors to pay all pre-petition wages, salaries and related benefits that were due, owing or accrued as of the Petition Date. The Debtors have also concurrently filed a motion requesting entry of an order authorizing the Debtors to pay certain taxes and other fees. Upon information and belief, only checks issued in the ordinary course of Debtors' business are or may be outstanding against the Accounts.

28.    Consistent herewith, the Debtors request that this Court prohibit all financial institutions and banks at which the Debtors' Accounts are maintained from offsetting, freezing or otherwise impeding the use or transfer of, or access to, any funds deposited in such Accounts on or subsequent to the Petition Date on account of any claim such financial institution or bank may have against the Debtors that arose before the Petition Date.

29.    The cash management procedures employed by the Debtors constitute ordinary, usual, and essential business practices and are similar to those used by other restaurant businesses. The Cash Management System provides significant benefits to the Debtors, including the ability to control funds centrally and to ensure the availability of funds when necessary.

30.    Compelling the Debtors to adopt a new, segmented cash management system would be expensive and would create unnecessary administrative problems. Further disruption of the Cash Management System could have a severe and adverse effect upon the Debtors' ability to operate in Chapter 11. Consequently, maintenance of the Cash Management System is essential and is in the best interests of all creditors and other parties-in-interest.

31.    The Debtors submit that the relief requested in the Motion is appropriate and within this Court's authority. A debtor's request for authorization to continue to use its cash management system has been held to be entirely consistent with section 363(c)(l) of the Bankruptcy Code, which allows a debtor-in-possession to "use property of the estate in the ordinary course of business." See Charter Co. v. Prudential Ins. Co. of Am., (In re Charter Co.),

778 F.2d 617, 621 (11th Cir. 1985) (observing that the bankruptcy court's order authorizing the debtor to continue using its routine cash management system was "entirely consistent with the [Bankruptcy Code]").

32.     Courts in this jurisdiction have recognized that, in large chapter 11 cases, strict enforcement of the requirement that a debtor-in-possession close its bank accounts does not serve the rehabilitative process of chapter 11 and, therefore, have waived that requirement and replaced it with more effective procedures similar to those requested in this Motion.  In addition, relief similar to the relief requested in this Motion with respect to the Cash Management System has been granted repeatedly by courts in this district.  See, e.g., In re Mass. Elephant & Castle Group, Inc., Case No. 11-16155 (HJB) (Bankr. D. Mass. June 30, 2011) [Docket No. 25]; In re Oscient Pharm. Corp., Case No. 09-16576 (HJB) (Bankr. D. Mass. July 20, 2009) [Docket No. 85]; In re The Educ. Res. Inst., Case No. 08-12540 (HJB) (Bankr. D. Mass. Apr. 10, 2008) [Docket No. 30]; In re Lexington Jewelers Exchange, Inc., Case No. 08-10042 (WHC) (Bankr. D. Mass. Jan. 4, 2008) [Docket No. 49]; In re Iron Age Corp., Case No. 07-40217 (JBR) (Bankr. D. Mass. Jan. 24, 2007) [Docket No. 40]; In re Plymouth Rubber Co., Inc., Case No. 05-16088 (JNF) (Bankr. D. Mass. July 20, 2005) [Docket No. 68]; In re Syratech Corp., Case No. 05- 11062 (RS) (Bankr. D. Mass. Feb. 22, 2005) [Docket No. 116].

## Maintenance of Certain Bank Accounts, Check Stock and Existing Business Forms

33.     To minimize expenses to their estates, the Debtors also request authorization to continue to use all correspondence and business forms (including, but not limited to, letterheads, purchase orders, multi-copy checks, envelopes, promotional materials, and other business forms existing) immediately prior to the Petition Date without reference to the Debtors' status as debtors-in-possession.  Once the Debtors' existing stock is exhausted, the Debtors will imprint the

8

legend "DIP" or "Debtor-in-Possession" and the case number for the Debtors' jointly-administered Chapter 11 Cases on any new stock of correspondence and business forms acquired.

34.    Changing correspondence and business forms would be needlessly expensive and burdensome to the Debtors' estates and disruptive to the Debtors' operations. Parties doing business with the Debtors undoubtedly will be aware of the Debtors' status as debtors-in-possession due to the Debtors' provision of notice of the commencement of these chapter 11 cases, the press releases issued by the Debtors, and information circulating within the restaurant industry. Accordingly, adding a "Debtor-in-Possession" legend would have little practical effect.

35.    Relief similar to that requested in the Motion is consistent with the relief granted in other large chapter 11 cases in this district. See, e.g., In re Mass. Elephant & Castle Group, Inc., Case No. 11-16155 (HJB) (Bankr. D. Mass. June 30, 2011) [Docket No. 25]; In re Oscient Pharm. Corp., Case No, 09-16576 (HJB) (Bankr. D. Mass. July 20, 2009) [Docket No. 85]; In re Lexington Jewelers Exchange, Inc., Case No. 08-10042 (WHC) (Bankr. D. Mass. Jan. 4, 2008) [Docket No. 49]; In re Iron Age Corp., Case No. 07-40217 (JBR) (Bankr. D. Mass. Jan. 24, 2007) [Docket No. 40]; In re Syratech Corp., Case No. 05-11062 (RS) (Bankr. D. Mass. Feb. 22, 2005) [Docket No. 116].

36.    Additionally, the Debtors seek a partial waiver of the United States Trustee's guidelines providing that debtors stamp their checks with the legend "debtor-in-possession" as to their payroll checks only. Assuming that the United States Trustee's Office has the authority to require this, see In re Young, 205 B.R. 894 (Bankr. W.D. Tenn. 1997) (United States Trustee does not have statutory authority to enforce this requirement), the Debtors believe that requiring them to imprint their payroll checks with the "debtor-in-possession" legend may adversely affect employee morale and quite possibly affect the willingness of employees to remain in the Debtors' employ. The Debtors' employees are highly mobile – they can easily leave and find another job.

9

Departures at this time will result in a severe disruption of the Debtors' business to the detriment of parties-in-interest.

37.     The Debtors submit that a grant of the relief sought herein will facilitate a smooth and orderly transition of their operations into chapter 11 and minimize the disruption of their business affairs, without harming either the policies of chapter 11 cases or the rules of this Court.

## Waiver

38.     To successfully implement the foregoing, the Debtors seek a waiver of the notice requirements of Rule 6004(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the stay of an order authorizing the use, sale or lease of a debtor's property under Bankruptcy Rule 6004(h).

## Notice

39.     No trustee, examiner or creditors' committee has been appointed in these cases. The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the District of Massachusetts; (b) the creditors holding the twenty (20) largest unsecured claims against the Debtors' estates (on a consolidated basis); (c) the known creditors with purported secured claims against the Debtors' estates; (d) counsel to the Senior Secured Lenders (as defined in the Declarations); and (e) any party which has filed, prior to the date of filing this Motion, a request for service of pleadings in this case.  In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided.

## No Prior Request

40.     No prior request for relief sought herein has been made by the Debtors to this or any other Court.

Client Matter/27288/1/A3468052.DOC[Ver:3]

WHEREFORE, the Debtors respectfully request that this Court enter an Order, substantially in the form attached hereto as **Exhibit B**, granting the relief requested herein and such other and further relief as the Court deems just.

Respectfully submitted,

**COSI, INC., XANDO COSI OF MARYLAND, INC., COSI SANDWICH BAR, INC., HEARTHSTONE ASSOCIATES, LLC, AND HEARTHSTONE PARTNERS, LLC**

By their proposed counsel,

/s/ Christine E. Devine
Joseph H. Baldiga, BBO # 549963
Christine E. Devine, BBO #566990
Kate P. Foley, BBO #682548
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581-3926
Phone: (508) 898-1501
Fax:    (508) 898-1502
Email: bankrupt@mirickoconnell.com
Email: cdevine@mirickoconnell.com
Email: kfoley@mirickoconnell.com

Dated:  September 28, 2016

Client Matter/27288/1/A3468052.DOC[Ver:3]

# EXHIBIT A



# Current Account Structure

**COSI, INC.**

## Group Accounts

## Standalone Account

**Cosi Inc.**
**Gift Card**
**x8562**
- Post No Checks
- Electronic Statements

**Cosi Sandwich Bar Inc.**
**MMDA**
**x2445**
- Current Balance: $49,228.11
- Interest Rate: 0.10%

**Cosi Sandwich Bar Inc**
**CD (Term: 12/03/15 365 day)**
**x7633**
- Current Balance: $36,450
- Interest Rate: 0.01%

**J.P. Morgan ACCESS**
- 8 Accounts
- Information Reporting – 45 days
- Wires
- Account Transfer

- Corporate Card
  $50K Cash Secured

**CHASE**

---

**Cosi Inc.**
**Controlled Disbursement Account**
**x8596**
- Cash Concentration Sub (ZBA)
- Controlled Disbursement Account
- Checks Paid
- Paid Check Imaging
- Stop Payments w/Auto Renewal
- Payables Web Services
  - Positive Pay with Payee Name
  - Data Download
  - ACH Transaction Review
- ACH Origination via Direct Send
- ACH Credit/Debit Received

**Cosi Inc.**
**Main Operating Account**
**x8539**
**Group Billing Account**
- Cash Concentration Master
- Controlled Disbursement Funding Account
- Post No Checks
- Check Deposits – Chase Quick Deposit
- Outgoing/Incoming Wires
- ACH Origination via ACCESS (Debits & Credits)
- ACH Debit Block
- Electronic Statements
- Extended Transaction Reporting (90 days)

Automatic
Dollar
Transfers

Zero Balance Accounts

**Cosi Inc.**
**Payables Utilities Account**
**x8570**
- Cash Concentration Sub
- Post No Checks
- ACH Debit Block
- ACH Debit Received
- Electronic Statements

**Cosi Inc.**
**Depository Account**
**x8547**
- Cash Concentration Sub (ZBA)
- Post No Checks
- Branch Cash Deposits
- Branch Cash/Coin Orders
- Check Deposits (<20)
- ACH Credits Received
- Electronic Statements

**Cosi Inc.**
**Manual Payroll Account**
**x8554**
- Cash Concentration Sub (ZBA)
- Checks Paid (600+)
- Paid Check Imaging
- Stop Payments w/Auto Renewal
- Payables Web Services
  - Positive Pay with Payee Name
  - Data Download
  - ACH Transaction Review
- Electronic Statements

**Cosi Inc.**
**Merchant Card Account**
**x8604**
- Cash Concentration Sub
- Post No Checks
- ACH Debit Block
- ACH Credit/Debit Received
- Electronic Statements

**Cosi Inc.**
**Utah Payroll**
**x3373**
- Cash Concentration Sub
- Post No Checks
- ACH Debit Block
- ACH Debit Received
- Electronic Statements

5

## EXHIBIT B

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | |
|---|---|
| In re: | Chapter 11 |
| COSI, INC., *et al.*,[1] | Case No. 16- _13704 (MSH )_ |
| Debtors. | (Joint Administration Requested) |

**ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF ORDER GRANTING
AUTHORITY TO CONTINUE TO USE CERTAIN PRE-PETITION
BANK ACCOUNTS, CHECK STOCK AND EXISTING BUSINESS FORMS**

Upon consideration of the *Debtors' Motion for Entry of an Order Granting Authority to Continue to Use Certain Pre-Petition Bank Accounts, Check Stock and Existing Business Forms* (the "Motion"); the Court having reviewed the Motion; the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (c) venue of these chapter 11 cases in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409 and (d) notice of the Motion was sufficient under the circumstances; the Court determining that the legal and factual bases set forth in the Motion establish just cause for the relief granted by this Order; and it appearing that the relief requested is in the best interest of the Debtors' estates, their creditors and other parties in interest;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED in its entirety.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the federal tax identification number for each of the Debtors, are Cosi, Inc. (3745), Xando Cosi of Maryland, Inc. (2196), Cosi Sandwich Bar, Inc. (0910), Hearthstone Associates, LLC (6267), and Hearthstone Partners, LLC (9433). The Debtors' corporate offices are located at 294 Washington Street, Suite 510, Boston, MA 02108.

2.       The Debtors are authorized to continue to (i) use the Accounts[2], (ii) deposit funds in and withdraw funds from such Accounts by all usual means, (iii) use their existing check stock and business forms without the necessity of opening new debtor-in-possession bank accounts and obtaining new business forms, and (iv) treat the Accounts as debtor-in-possession bank accounts for all purposes, provided only that once the existing stock is exhausted, the Debtors will imprint the legend "DIP" or "Debtor in Possession" and the case number for the Debtors' jointly-administered chapter 11 cases on any new stock of correspondence and business forms acquired other than for payroll.

3.       The Debtors' banks upon which any checks are drawn in payment of any pre-petition obligations covered by this Order, either before, on, or after the date on which the Debtors filed their chapter 11 cases be, and they hereby are, authorized and directed to process, honor and pay upon presentation any and all such checks to the extent sufficient funds are on deposit in such accounts.

4.       All financial institutions and banks at which the Debtors' Accounts are maintained are prohibited from offsetting, freezing or otherwise impeding the use or transfer of, or access to, any funds deposited in such Accounts on or subsequent to the Petition Date on account of any claim such financial institution or bank may have against the Debtors that arose before the Petition Date.

---

[2]   Unless otherwise defined herein, initially capitalized terms shall have the meanings ascribed to them in the Motion.

5.      This Order is without prejudice to the Debtors' right to (i) close any of the Accounts or (ii) to open or close new accounts at any banking institution.  The Debtor shall promptly notify the Office of the United States Trustee and counsel for any statutory committee if an account is closed or an account is opened.


 

Honorable *Melvin S. Hoffman*
United States Bankruptcy Judge

Dated: _____ , 2016

Client Matter/27288/1/A3468052.DOC[Ver:3]