**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**(EASTERN DIVISION)**

| | |
|---|---|
| In re: | **Chapter 11** |
| **COSI, INC.,** *et al.,*[1] | Case No. 16- 13704 (MSH) |
| **Debtors.** | **(Joint Administration Requested)** |

**DEBTORS' MOTION FOR ENTRY OF ORDER (I) SCHEDULING EMERGENCY**
**HEARING ON FIRST DAY MOTIONS, (II) LIMITING NOTICE, AND**
**(III) GRANTING RELATED RELIEF, WITH REQUEST FOR EMERGENCY**
<u>**DETERMINATION**</u>

Cosi, Inc. ("COSI"), Xando Cosi of Maryland, Inc. ("Xando"), Cosi Sandwich Bar, Inc.

("CSB"), Hearthstone Associates, LLC ("HALLC"), and Hearthstone Partners, LLC ("HPLLC";

collectively with COSI, Xando, CSB, and HALLC, the "Debtors"), the above-captioned debtors

and debtors-in-possession, hereby submit this motion (the "Motion") pursuant to Rule 9006 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1(g) of the

Local Rules of the United States Bankruptcy Court for the District of Massachusetts (the

"MLBR"), and request that this Court schedule an emergency hearing (the "First Day Hearing")

on the following pleadings (collectively, the "First Day Motions")[2], which the Debtors have filed

contemporaneously with this Motion:

1.  Motion of the Debtors for Entry of an Order Directing Joint Administration of
    Related Chapter 11 Cases and for Extension of Time to File Schedules of

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of the federal tax identification number for
each of the Debtors, are Cosi, Inc. (3745), Xando Cosi of Maryland, Inc. (2196), Cosi Sandwich Bar, Inc.
(0910), Hearthstone Associates, LLC (6267), and Hearthstone Partners, LLC (9433).  The Debtors' corporate
offices are located at 294 Washington Street, Suite 510, Boston, MA  02108.

[2]   As noted herein, emergency relief is not necessary with respect to certain of the First Day Motions.  The
Debtors, however, will fully apprise the Court of all First Day Motions at the First Day Hearing and will request
subsequent scheduling orders as necessary.

Assets and Liabilities and Statements of Financial Affairs (the "Joint Administration Motion");

2. Debtors' (I) Motion for a Scheduling Order Regarding Sale and Sale Procedures Issues and (II) Request for Emergency Hearing (the "Sale Scheduling Motion");

3. Debtors' Motion Under 11 U.S.C. §§ 105(a), 361, 362(c)(2), 363(e) and 364 and Fed. R. Bankr. P. 2002, 4001 and 9014 for Order (I) Authorizing Debtors to Obtain Post-Petition Financing and (II) Granting Adequate Protection to Pre-Petition Secured Parties (the "DIP Financing Motion");

4. Debtors' Motion for Entry of an Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Hearing on Further Use of Cash Collateral, and (IV) Granting Related Relief (the "Cash Collateral Motion");

5. Debtors' Motion for Order (I) Authorizing (a) Payment of Pre-Petition Wages, Salaries and Employee Benefits, (b) Reimbursement of Employee Business Expenses, and (c) Payment of Other Employee Related Amounts; and (II) Authorizing Applicable Banks and Other Financial Institutions to Receive, Process, Honor and Pay All Checks and Drafts Drawn on Debtors' Bank Accounts Relating to the Foregoing (the "Wage Motion");

6. Debtors' Motion for Entry of Order Granting Authority to Continue to Use Certain of Their Pre-Petition Bank Accounts, Check Stock and Existing Business Forms (the "Cash Management Motion");

7. Debtors' Motion for an Order Authorizing (I) the Debtors to Remit and Pay Certain Taxes and Fees and (II) Financial Institutions to Process and Cash Related Checks and Transfers (the "Tax Motion");

8. Debtors' Motion for Entry of an Order Authorizing the Debtors to Honor Certain Pre-Petition Obligations to Customers and to Otherwise Continue Customer Practices and Programs in the Ordinary Course of Business (the "Customer Programs Motion");

9. Motion of the Debtors for an Order Authorizing and Approving the Rejection of Certain Unexpired Leases (the "Lease Rejection Motion");

10. Application by Debtors for Order Approving Retention of Mirick, O'Connell, DeMallie & Lougee, LLP as Counsel to the Debtors (the "MODL Retention Application");

11. Application by Debtors for Order Approving Retention of The O'Connor Group, Inc. as Financial Advisors to the Debtors (the "TOG Retention Application"); and

12. Debtors' Motion for an Order Approving Key Employee Retention Program (the "Key Employee Motion").

**The Debtors respectfully request that this Court schedule the First Day Hearing on the First Day Motions as soon after September 28, 2016 (the "Petition Date") as the Court's calendar will permit.**

**Pursuant to MLBR 9013-1(g)(1)(A), the Debtors also request emergency determination of this Motion itself (to the extent necessary) so that the Debtors may provide notice of the date and time of the First Day Hearing as soon as possible.**

The Debtors also request, pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure and MLBR 2002-1, that this Court authorize the Debtors to limit notice of the First Day Motions and First Day Hearing to service upon: (a) the Office of the United States Trustee for the District of Massachusetts; (b) the creditors holding the twenty (20) largest unsecured claims against the Debtors' estates (on a consolidated basis); (c) the known creditors with purported secured claims against the Debtors' estates; (d) counsel to the Senior Secured Lenders (defined in the Declarations filed contemporaneously herewith); and (e) any party which has filed, prior to the date of filing this Motion, a request for service of pleadings in this case. The Debtors will also service a copy of the Lease Rejection Motion and this Motion on counterparties to the Exit Store Leases (as defined in the Lease Rejection Motion).

In support of the Motion, the Debtors submit the *Declaration of Patrick Bennett, Interim CEO and President of the Debtors, in Support of Chapter 11 Petition and First Day Pleadings* and *Declaration of Edward Schatz, The O'Connor Group, Inc., Acting Chief Financial Officer of the Debtors, in Support of Chapter 11 Petition and First Day Pleadings* (together, the "Declarations"), filed with this Court contemporaneously herewith.

In further support of this Motion, the Debtors respectfully represent as follows:

## General Background

1.    On the date hereof (the "Petition Date"), the Debtors commenced the above-captioned chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") with the Court.

2.    The Debtors continue to operate their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date of this Motion, no trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases.

3.    COSI is an international fast-casual restaurant company featuring its crackly-crust flatbread made fresh throughout the day and specializing in a variety of made-to-order hot and cold sandwiches, salads, bowls, breakfast wraps, "Squagels®" (square bagels), melts, soups, flatbread pizzas, S'mores, snacks, desserts, and a large offering of handcrafted, coffee-based, and specialty beverages.

4.    The Debtors' support center (i.e., corporate headquarters) is located in Boston, Massachusetts.

5.    Prior to the Petition Date, there were approximately 107 COSI restaurants operating in the United States, the United Arab Emirates, and Costa Rica.  Of the total restaurants, 72 locations were company-owned, while the remaining 35 locations were franchise-owned.

6.    A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion, are set forth in greater detail in the First Day Declarations, filed contemporaneously herewith and incorporated herein by reference.

<u>**Summary of First Day Motions**</u>

### A.    <u>The Joint Administration Motion.</u>

7.    The Debtors have requested entry of an order directing the joint administration of the Chapter 11 Cases for procedural purposes only.

8.    Further, the Debtors seek an extension of the deadline to file their Schedules and Statements of Financial Affairs to October 28, 2016. The Debtors' immediate objective in these Chapter 11 Cases is to ensure that the Debtors have the Court authority necessary to continue operating during the Chapter 11 period. Accordingly, the Debtors anticipate that they will need additional time to accurately prepare their Schedules and Statements of Financial Affairs.

### B.    <u>The Sale Scheduling Motion.</u>

9.    The Debtors have requested that the Court enter a scheduling order related to the Debtors' anticipated sale of substantially all of the Debtors' assets pursuant to Bankruptcy Code §§ 363 and 365 (the "Private Sale") and assumption and assignment of certain unexpired leases and executory contracts as further described in the Debtor-In-Possession Term Sheet among the Debtors and the DIP Lenders (the "Term Sheet"). The DIP Lenders are expected to be the stalking horse bidder for the Private Sale.

### C.    <u>The DIP Financing Motion.</u>

10.    The Debtors also request approval of their proposed debtor-in-possession financing (the "DIP Financing"). In sum, the Senior Secured Lenders have agreed to provide up to $4.1 million in post-petition financing to fund operations during the Chapter 11 period. They (or their nominee) have submitted a bid to purchase the Debtors for $6.8 million. The Senior Secured Lenders may only credit bid up to the value of the DIP Lien amount, and issues related to the avoidability of pre-petition liens are preserved.

### D.    The Cash Collateral Motion.

11.    The Debtors also seek to use cash collateral in accordance with the proposed budget attached to the Cash Collateral Motion.  Without the use of cash collateral, the Debtors' operations will be substantially and irreparably harmed.  In order to avoid this harm to the Debtors' estates, the Debtors require the use of cash collateral to pay, among other things, payroll, utilities, taxes, insurance, and other ordinary business costs and expenses.

12.    The Debtors and the Senior Secured Lenders have agreed to the Debtors' use of cash collateral with a full reservation of rights regarding the rights of the Debtors (or their successors) to challenge the Senior Secured Lenders' liens.

### E.    The Wage Motion.

13.    The Debtors also seek entry of an order authorizing the Debtors to pay their employees any wages, salaries, or commission which accrued during the period of September 20, 2016 through September 27, 2016, for which time the Debtors' employees have not yet been paid, prior to the filing to these Chapter 11 Cases, including overtime wages, employee benefits, bonuses, and taxes associated therewith.

14.    The Wage Motion is intended to allow the Debtors to operate during the Chapter 11 Cases as close to "business-as-usual" as possible.  The Debtors' next scheduled regular payroll is October 10, 2016 for the period of September 20, 2016 through October 3, 2016.

15.    The Debtors believe that considering the Wage Motion at the First Day Hearing is necessary since any delay in paying wages and benefits will adversely affect the Debtors' relationship with their employees.  Without their employees, it will be almost impossible for the Debtors to continue their operations and preserve the going concern value of the Debtors.

**F.    The Cash Management Motion.**

16.    The Debtors also seek entry of an order authorizing the Debtors to maintain and use their existing cash management system.  The Debtors believe that the Cash Management Motion is necessary in order to seamlessly continue business operations.

17.    Further, all parties-in-interest will be best served by preserving business continuity and avoiding operational and administrative paralysis that the closing of the bank accounts and opening of new ones may create.

**G.    The Tax Motion.**

18.    The Debtors believe that the relief requested in the Tax Motion is necessary since the Debtors collect and remit payment of sales and use taxes as well as other taxes and operation fees to various governmental agencies in the ordinary course.

**H.    The Customer Programs Motion.**

19.    The Debtors also seek to maintain existing customer programs, including the Debtors' gift card, loyalty and discount programs.  Thus, the Debtors believe that the Customers Programs Motion is necessary to preserve the Debtors' critical customer relationships and goodwill for the benefit of the ongoing operation of the Debtors.

**I.    The Lease Rejection Motion.[3]**

20.    The Debtors also request that the Court authorize the Debtors to reject certain unexpired leases.

21.    As noted in the Declarations, prior to the Petition Date, the Debtors identified certain restaurant locations that were generally unprofitable or did not fit into the Debtors' go-

---

[3] Emergency relief is not necessary with respect to the Lease Rejection Motion.  The Debtors, however, have requested that rejection be effective as of the Petition Date.  Therefore, the Debtors have provided immediate notice of this Motion and of the Lease Rejection Motion to the affected landlords.  In addition, all of the leased premises related to the Exit Stores were vacated with keys turned over to landlord-counterparties pre-petition.

forward strategy, and subsequently closed approximately 29 locations (the "Exit Stores").   As a result, the Debtors seek to reject the unexpired leases related to the Exit Stores.

### J.    The MODL Retention Application.[4]

22.    The Debtors have also filed contemporaneously herewith the MODL Retention Application, which seeks the Court's authority to employ Mirick, O'Connell, DeMallie & Lougee, LLP ("MODL") as counsel to the Debtors, under general retainer, as specifically set forth in the MODL Retention Application.

### K.    The TOG Retention Application.[5]

23.    The Debtors have also filed contemporaneously herewith the TOG Retention Application, which seeks the Court's authority to employ The O'Connor Group, Inc. ("TOG") as financial advisors to the Debtors, under general retainer, as specifically set forth in the TOG Retention Application.  Among other things, TOG will provide necessary services to the Debtors by filling the role of interim Chief Financial Officer.

### L.    The Key Employee Motion.[6]

24.    The Debtors have also filed contemporaneously herewith the Key Employee Motion.

25.    Among other things, the Key Employee Motion seeks the Court's approval of a retention program for certain eligible employees and authorization of the payments contemplated thereunder.

---

[4]    Emergency relief is not necessary with respect to the MODL Retention Application.

[5]    Emergency relief is not necessary with respect to the TOG Retention Application.

[6]    Emergency relief is not necessary with respect to the Key Employee Motion.

26.     The retention program contemplated within the Key Employee Motion seeks to incentivize certain valuable, hard-to-replace employees to remain with the Debtors during the Chapter 11 Cases.

**An Emergency Hearing on Certain of the First Day Motions is Necessary and Appropriate.**

27.     The scheduling of an emergency hearing as requested herein on the First Day Motions is necessary and appropriate.  In order to further maximize the value of the Debtors' businesses, the Debtors must continue to operate as a going concern through the contemplated sale.

28.     As discussed further in the First Day Motions, without authorization to use cash collateral, the Debtors have no ability to fund the operations that are necessary to maximize their value as a going concern.  Similarly, emergency determination of the DIP Financing Motion on an interim basis and emergency determination of the Cash Management Motion, the Wage Motion, the Tax Motion, and the Customer Programs Motion will permit the Debtors to continue operations in as normal a manner as possible prior to the contemplated sale of their business. Further, the Lease Rejection Motion will allow the Debtors to shed their unprofitable and undesirable stores and focus their efforts in these Chapter 11 Cases on maximizing value for the Estates at the remaining locations.

29.     Accordingly, this Court's scheduling of an emergency hearing on the First Day Motions is necessary and appropriate, and is in the best interests of the Debtors' estates and creditors.

30.     Based on the foregoing, the Debtors request that this Court schedule an emergency hearing on the First Day Motions as soon after the September 28, 2016 Petition Date as the Court's calendar will permit.  Further, at the First Day Hearing, the Debtors will request

that this Court schedule additional hearings related to the proposed sale timeline pursuant to the

Sale Scheduling Motion.

### Request to Limit Notice of First Day Motions.

31.     The Debtors also request, pursuant to Rule 2002 of the Federal Rules of

Bankruptcy Procedure and MLBR 2002-1, immediate authority to limit notice of the First Day

Motions to service upon: (a) the Office of the United States Trustee for the District of

Massachusetts; (b) the creditors holding the twenty (20) largest unsecured claims against the

Debtors' estate (on a consolidated basis); (c) counsel to the Senior Secured Lenders; (d) with

regard to the Lease Rejection Motion and this Motion only, counterparties to the Exit Store

Leases (as defined in the Lease Rejection Motion); (e) all known parties holding secured claims;

and (f) all parties that have indicated to Debtors' counsel their intent to request notice (i.e., the

Notice Parties).

32.     Service of the First Day Motions on all creditors in these Chapter 11 Cases would

be extremely expensive, would impose an undue burden on the Debtors both financially and

administratively, and would not confer any substantial benefit on the Debtors, their estates, or

their creditors.

33.     Based on the foregoing, the Debtors submit that (i) an emergency hearing on the

First Day Motions as requested herein and (ii) limitation of notice as set forth herein are

appropriate and necessary under the circumstances.

WHEREFORE, the Debtors respectfully request that this Court enter an Order:

a.     Granting this Motion;

b.      Scheduling a hearing on the First Day Motions as requested herein as soon

after the Debtors' September 28, 2016 Petition Date as the Court's

calendar will permit;

c.      Immediately authorizing the Debtors to limit notice regarding the First

Day Motions to the Notice Parties identified herein;  and

d.      Granting the Debtors such other and further relief as is just.

Respectfully submitted,

**COSI, INC., XANDO COSI OF
MARYLAND, INC., COSI SANDWICH
BAR, INC., HEARTHSTONE
ASSOCIATES, LLC, AND
HEARTHSTONE PARTNERS, LLC**

By their proposed counsel,

/s/ Christine E. Devine
Joseph H. Baldiga, BBO # 549963
Christine E. Devine, BBO #566990
Kate P. Foley, BBO #682548
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581-3926
Phone: (508) 898-1501
Fax:    (508) 898-1502
Email: bankrupt@mirickoconnell.com
Email: cdevine@mirickoconnell.com
Email: kfoley@mirickoconnell.com

Dated:  September 28, 2016

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (EASTERN DIVISION)

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **COSI, Inc., et al.,**[1] | **Case No. 16-** 13704 (MSH) |
| **Debtors.** | **(Joint Administration Requested)** |

## ORDER (I) SCHEDULING EMERGENCY HEARING ON FIRST DAY MOTIONS, (II) LIMITING NOTICE, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion") dated September 28, 2016 of Cosi, Inc. ("COSI"),

Xando Cosi of Maryland, Inc. ("Xando"), Cosi Sandwich Bar, Inc. ("CSB"), Hearthstone

Associates, LLC ("HALLC"), and Hearthstone Partners, LLC ("HPLLC"; collectively with

COSI, Xando, CSB, and HALLC, the "Debtors"), the above-captioned debtors and debtors-in-

possession, requesting (I) an emergency hearing on:

1. Motion of the Debtors for Entry of an Order Directing Joint Administration of Related Chapter 11 Cases and for Extension of Time to File Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Joint Administration Motion");

2. Debtors' (I) Motion for a Scheduling Order Regarding Sale and Sale Procedures Issues and (II) Request for Emergency Hearing (the "Sale Scheduling Motion");

3. Debtors' Motion Under 11 U.S.C. §§ 105(a), 361, 362(c)(2), 363(e) and 364 and Fed. R. Bankr. P. 2002, 4001 and 9014 for Order (I) Authorizing Debtors to Obtain Post-Petition Financing and (II) Granting Adequate Protection to Pre-Petition Secured Parties (the "DIP Financing Motion");

4. Debtors' Motion for Entry of an Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Hearing on Further Use

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of the federal tax identification number for each of the Debtors, are Cosi, Inc. (3745), Xando Cosi of Maryland, Inc. (2196), Cosi Sandwich Bar, Inc. (0910), Hearthstone Associates, LLC (6267), and Hearthstone Partners, LLC (9433). The Debtors' corporate offices are located at 294 Washington Street, Suite 510, Boston, MA 02108.

of Cash Collateral, and (IV) Granting Related Relief (the "Cash Collateral Motion");

5.   Debtors' Motion for Order (I) Authorizing (a) Payment of Pre-Petition Wages, Salaries and Employee Benefits, (b) Reimbursement of Employee Business Expenses, and (c) Payment of Other Employee Related Amounts; and (II) Authorizing Applicable Banks and Other Financial Institutions to Receive, Process, Honor and Pay All Checks and Drafts Drawn on Debtors' Bank Accounts Relating to the Foregoing (the "Wage Motion");

6.   Debtors' Motion for Entry of Order Granting Authority to Continue to Use Certain of Their Pre-Petition Bank Accounts, Check Stock and Existing Business Forms (the "Cash Management Motion");

7.   Debtors' Motion for an Order Authorizing (I) the Debtors to Remit and Pay Certain Taxes and Fees and (II) Financial Institutions to Process and Cash Related Checks and Transfers (the "Tax Motion"):

8.   Debtors' Motion for Entry of an Order Authorizing the Debtors to Honor Certain Pre-Petition Obligations to Customers and to Otherwise Continue Customer Practices and Programs in the Ordinary Course of Business (the "Customer Programs Motion");

9.   Motion of the Debtors for an Order Authorizing and Approving the Rejection of Certain Unexpired Leases (the "Lease Rejection Motion");

10.  Application by Debtors for Order Approving Retention of Mirick, O'Connell, DeMallie & Lougee, LLP as Counsel to the Debtors (the "MODL Retention Application");

11.  Application by Debtors for Order Approving Retention of The O'Connor Group, Inc. as Financial Advisors to the Debtors (the "TOG Retention Application"); and

12.  Debtors' Motion for an Order Approving Key Employee Retention Program (the "Key Employee Motion").

(collectively, the "First Day Motions"), (II) limiting notice, and (III) granting related relief; and

the Court finding that the Notice given of the Motion as set forth in the Certificate of Service

accompanying the Motion and filed with the Court is sufficient; and no objection to the Motion

having been filed or any such objection having been withdrawn or overruled;

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.    Emergency determination of the Motion is GRANTED;

2.    This Court shall conduct a hearing on the First Day Motions on
      _____, 2016 at _____ (the "First Day Hearing");

3.    The Debtors are hereby authorized to limit notice regarding the First Day Motions
      to service upon the Office of United States Trustee for the District of
      Massachusetts, the creditors holding the twenty (20) largest unsecured claims
      against the Debtors' estates (on a consolidated basis), counsel to the Senior
      Secured Lenders, all known parties holding secured claims, and all parties that
      have indicated to Debtors' counsel their intent to request notice (collectively, the
      "Notice Parties"), except that the Debtors shall also serve the Lease Rejection
      Motion upon the counterparties to the Exit Store Leases (as defined in the Lease
      Rejection Motion).

4.    The Debtor is to provide notice of the First Day Hearing to the Notice Parties
      forthwith.

Dated: _____, 2016

                                        _____
                                        Honorable Melvin S. Hoffman
                                        United States Bankruptcy Judge