## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## (EASTERN DIVISION)

| | |
|---|---|
| **In re:** | |
| **COSI, INC.,** *et al.,*[1] | **Chapter 11** |
| **Debtors.** | **Case No. 16-13704-MSH** |
| | **(Jointly Administered)** |

## ORDER ESTABLISHING BIDDING PROCEDURES

Upon the *Debtors' Motion for (I) Order Establishing Bidding Procedures and Granting Related Relief and (II) Order Approving Sale of Substantially All Assets Free and Clear of all Liens, Claims, Encumbrances, and Interests and Granting Related Relief* [Dkt. No. 105] (the "Sale Motion") and the Court's having determined that the Bidding Procedures[2] requested in the Sale Motion are in the best interests of the bankruptcy estates, the Debtors' creditors, and other parties in interest; and having heard the statements in support of the relief requested therein at a hearing, before the Court (the "Bidding Procedures Hearing") and after due deliberation thereon; and good and sufficient cause having been shown for the relief requested; and adequate notice having been given;

IT IS HEREBY ORDERED THAT:

1.      The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law,

---

[1]      The Debtors in these Chapter 11 cases are Cosi, Inc. (Case No. 16-13704-MSH), Xando Cosi of Maryland, Inc. (Case No. 16-13706-MSH), Cosi Sandwich Bar, Inc. (Case No. 16-13705-MSH), Hearthstone Associates, LLC (Case No. 16-13707-MSH), and Hearthstone Partners, LLC (Case No. 16-13708-MSH). The Debtors' corporate offices are located at 294 Washington Street, Suite 510, Boston, Massachusetts 02108. The cases are jointly administered under the Cosi, Inc. case number.

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the Sale Motion.

they are adopted as such. To the extent any conclusions of law are findings of fact, they are
adopted as such.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and
1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue in this Court is proper
pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested in the Sale Motion are sections 105,
363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007,
and 9014, and Local Rule 6004-1. The legal and factual bases set forth in the Sale Motion
establish just cause for the relief granted herein. Entry of this Bidding Procedures Order is in the
best interests of the Debtors and their respective estates, creditors, and all other parties-in-
interest.

4.      Notice of the Sale Motion, the Bidding Procedures Hearing, and the proposed
entry of this Bidding Procedures Order was adequate and sufficient under the circumstances of
these chapter 11 cases, and such notice complied with all applicable requirements of the
Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

5.      The Debtors have demonstrated a compelling and sound business justification for
the Court to grant the relief requested in the Sale Motion, including, without limitation, to
(i) approve the Bidding Procedures, (ii) approve the Debtors' execution of the Stalking Horse
Agreement and the Bid Protections therein, (iii) establish the Assumption and Assignment
Procedures, (iv) approve the form and manner of notice of all procedures, protections, schedules,
and agreements described in the Sale Motion and attached thereto, and (v) schedule a date for the
(a) Auction and (b) Sale Hearing; and (vi) grant related relief as set forth herein.  Such
compelling and sound business justification, which was set forth in the Sale Motion and on the

2

record at the Bidding Procedures Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

6.      Entry into the Stalking Horse Agreement with the Stalking Horse Bidder is in the best interests of the Debtors and the Debtors' estates and creditors, and it reflects a sound exercise of the Debtors' business judgment.

7.      The Bidding Procedures, substantially in the form attached hereto as **Schedule 1** are  incorporated herein by reference as if fully set forth in this Bidding Procedures Order, are fair, reasonable, and appropriate and represent the best method for maximizing the value of the Debtors' estates.

8.      The Bid Protections, including the Bid Protections specifically set forth in the Bidding Procedures: (i) shall, if triggered, be deemed an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code in accordance with the applicable Stalking Horse Agreement; (ii) are commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Stalking Horse Bidders; (iii) are reasonable and appropriate, including in light of the size and nature of the proposed Sale and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the Sale is subject to higher or better offers; and (iv) were necessary for the Stalking Horse Bidder to pursue the Sale and to be bound by the Stalking Horse Agreement.

9.      The Bid Protections are necessary to facilitate a competitive and value-maximizing Sale. The Bidding Procedures and the Bid Protections are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates. The Bidding Procedures and the Bid Protections were a material inducement to, and

express condition of, the willingness of the Stalking Horse Bidder to submit a bid through execution of its Stalking Horse Agreement which will serve as a minimum or floor bid on which the Debtors, their creditors, suppliers, vendors, and other bidders may rely.

10.    The Bidding Procedures and the Stalking Horse Agreements were negotiated by the parties at arms' length and in good faith by the Debtors and the Stalking Horse Bidder.

11.    The Notice of Sale and Stalking Horse Notice, substantially in the forms included in the Sale Motion in <u>Exhibit B</u>, and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of each sale of Assets, including, without limitation: (i) the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures (as amended by the attached Bidding Procedures); (iii) the deadline for filing objections to the Sale and entry of the applicable Sale Order, and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the Assets to be sold; (v) a material description of and instructions for promptly obtaining copies of the Stalking Horse Agreement; (vi) a description of the Sale as being free and clear of liens, claims, encumbrances, and other interests (except as set forth in the applicable Sale Order and Stalking Horse Agreement), with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the Sale proceeds; and (vii) notice of the proposed assumption and assignment of designated contracts to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement (or to another Successful Bidder arising from the Auction, if any), and no other or further notice of the Sale shall be required.

12.    The Contract and Lease Notice, substantially in the form attached to the Sale Motion as Exhibit C and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, is appropriate and reasonably calculated to provide all interested parties with

4

timely and proper notice of the potential assumption and assignment of the applicable designated contracts in connection with each sale of the Assets and the related Cure Costs, and no other or further notice is required. The Sale Motion, this Bidding Procedures Order, and the Assumption and Assignment Procedures set forth herein are reasonably calculated to provide counterparties to any executory contracts or unexpired leases to be assumed by the Debtors and assigned to the Successful Bidder with proper notice of the intended assumption and assignment of their designated contracts, the procedures in connection therewith, and any cure amounts relating thereto.

13.     The Winning Bidder Notice, substantially in the form attached to the Sale Motion as <u>Exhibit D</u> and incorporated herein by reference as if fully set forth in this Bidding Procedures Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Successful Bidder(s), and no other or further notice is required.

14.     The Debtors' sale process (including marketing of the Assets and the structure of the Bidding Procedures) has been reasonably calculated to maximize value for the benefit of all stakeholders.

**IT IS FURTHER HEREBY ORDERED THAT:**

15.     The Sale Motion as it relates to the Bidding Procedures is hereby granted to the extent set forth herein.

16.     All objections with regard to the relief sought in the Sale Motion as to the Bidding Procedures that have not been withdrawn, waived, or settled are overruled on the merits.

17.     The Bidding Procedures attached hereto as **Schedule 1** are approved and the Debtors are authorized to move forward accordingly.  In particular, but without limitation, this Court approves the provision set forth in paragraph 12 of the Bidding Procedures titled "Stalking

5

Horse Agreement and Stalking Horse Rights". The Debtors shall pay the Stalking Horse Bidder (a) a breakup fee in the amount of $315,000 (the "Breakup Fee"), and (b) reimbursement of expenses incurred by the Stalking Horse Bidder in an amount not to exceed $325,000 (the "Expense Reimbursement Fee" and together with the Breakup Fee, the "Bid Protections"), both payable at Closing (or upon the closing of a sale of any material portion of the Assets) and in the event that the Stalking Horse Agreement is terminated due to (i) the Debtors' closing or entering into an agreement for any alternative transaction with any person other than the Striking Horse Bidder, (ii) the Debtors' declaring another Bidder to be the Successful Bidder, or (iii) making any filing or taking any other action materially inconsistent with the Sale to the Stalking Horse Bidder. The Bid Protections will be an allowed administrative expense priority claim against the Debtors pursuant to sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

18.    _Expense Reimbursement Fee._  The Stalking Horse Bidder will provide the Debtors, the Committee and the Office of the United States Trustee with copies of all invoices, redacted to protect privileged and confidential information (the "Bid Protections Expense Invoices") for all fees, expenses and charges incurred in connection with the formulation, negotiation, execution, delivery, administration and enforcement of the Stalking Horse Bid and Stalking Horse Agreement, and all related diligence, efforts to evaluate, negotiate, fund, prepare to close and otherwise effectuate the transactions relating thereto (including, without limitation, the payment of reasonable fees and expenses of counsel and any financial consultant) ("Bid Protection Expenses"). The Committee, the Debtors, and the United States Trustee shall have five (5) business days from the receipt of the Bid Protection Expense Invoices to object to the payment of a specified portion of such Bid Protection Expense Invoices. If a timely objection is raised to any specified portion of any Bid Protection Expense Invoices, the portion that is not

6

disputed shall be promptly paid and the parties will attempt in good faith to resolve the dispute

consensually as soon as possible.   If no resolution is reached, the parties may request a hearing

from the Court to resolve the dispute.   To the extent an objection is raised and until resolved, the

Debtors shall not pay such disputed portion of the Bid Protection Expense Invoices pending a

consensual resolution or Court order.   To the extent that no objection is timely raised, the

Debtors are authorized to pay directly or reimburse the Stalking Horse Bidders for the Bid

Protection Expenses.  All Bid Protection Expenses shall be due and payable at Closing, subject

to the provisions above with respect to the submission of Bid Protection Expense Invoices and

the right of the Committee, the Debtors, and the United States Trustee to object.

19.    The Notice of Sale, Contract and Lease Notice, Stalking Horse Notice, and

Winning Bidder Notice (substantially in the forms attached to the Sale Motion) and the proposed

service of such notices are approved.

20.    The Bidding Procedures, substantially in the form attached hereto as **Schedule 1**,

are approved in their entirety. The Debtors are authorized to take any and all actions reasonably

necessary or appropriate to implement the Bidding Procedures, in accordance therewith and the

Stalking Horse Agreement. The failure to specifically include or reference a particular provision

of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the

effectiveness of such provision.

21.    The Stalking Horse Bidder is deemed a Qualified Bidder, and the Stalking Horse

Bid as set forth in the Stalking Horse Agreement is deemed a Qualified Bid.

22.    The Debtors are authorized to conduct the Auction in accordance with the

Bidding Procedures.

23.     The DIP Lenders shall have the right, subject in all respects to the Bankruptcy

Code, the Bidding Procedures and other applicable law, to: (i) credit bid all or any portion of

their allowed post-petition secured claims pursuant to Bankruptcy Code section 363(k) or other

applicable law solely to the extent of any funds actually advanced post-petition under the DIP

Agreement and as of the date of the Auction, and any such credit bid shall be deemed a Qualified

Bid, and (ii) as Stalking Horse Bidders, add the value of their Bid Protections to each of their

Overbids for purposes of evaluating the "highest and best" bid for the Assets, which added value

shall be treated as cash consideration in the event the Stalking Horse Bidder is the Successful

Bidder at the Auction.

24.     The Debtors are authorized to enter into the Stalking Horse Agreement, subject to

higher or otherwise better offers at the Auction. The Bid Protections contained in the Stalking

Horse Agreement are approved in their entirety, shall survive termination of the Stalking Horse

Agreement and, if triggered, shall be an allowed administrative expense under Bankruptcy Code

section 503(b) and 507(a)(2).  The Debtors are authorized to pay any and all amounts owing to

the Stalking Horse Bidder on account of the Stalking Horse Bidder's Bid Protections in

accordance with the terms of the Stalking Horse Agreement, without further action or order by

the Court at Closing, as set forth in the Bidding Procedures.

25.     The Debtors are directed to serve, on or before October 24, 2016 the Notice of

Sale on all parties entitled to notice in accordance with Bankruptcy Rule 2002 except as may be

otherwise limited by Court Order and on any party that has expressed a possible interest in

acquiring the Assets.

8

26.     The Debtors are directed to serve, on or before October 24, 2016 the Contract and Lease Notice on all counter-parties to the Contracts and Leases impacted by the Contract and Lease Notice and on all other parties entitled to notice thereof.

27.     The inclusion of a designated contract on the Contract and Lease Notice will not: (a) obligate the Debtors to assume any designated contract listed thereon or the Successful Bidders to take assignment of such designated contract; or (b) constitute any admission or agreement of the Debtors that such designated contract is an executory contract. Only those designated contracts that are included on a schedule of assumed and acquired contracts attached to the final asset purchase agreement with the Successful Bidders including amendments or modifications to such schedules in accordance with such asset purchase agreement (including, if applicable, the Stalking Horse Agreement) will be assumed and assigned to the Successful Bidders.

28.     Contemporaneously with service of the Winning Bidder Notice and not later than the close of business on December 1, 2016, the Debtors shall deliver to counter-parties to leases and contracts to be assumed adequate assurance materials, which materials the Debtors reasonably believe will: (a) demonstrate the Stalking Horse Bidder's or Winning Bidder's financial ability to perform, and (b) evidence the Stalking Horse Bidder's or Winning Bidder's ability to satisfy use restrictions in leases, if applicable, including:

(a)    the name of proposed assignee and its principals;

(b)    contact person for the proposed assignee (with email address and telephone number) that Landlord may contract directly;

(c)    the proposed assignee's intended use for the space;

and such other information concerning the proposed assignee and any other person providing credit support to show adequate assurance of future performance, which shall include:

9

(d)   the name of and related background information regarding any guarantor(s);

(e)   financial statements for the proposed assignee or other credit support provider;

(f)   proposed capitalization of the proposed assignee;

(g)   if applicable, cash flow projections for the proposed assignee and other credit support provider; and

(h)   with respect to leases, whether any existing security deposit will be retained by the landlord or whether the proposed assignee will provide a security deposit of at least the same amount.

29.   Notwithstanding the timing set forth in paragraph 28 herein, no later than (i) 5:00 p.m. on November 21, 2016, for the Stalking Horse Bidder and (ii) 5:00 p.m. on November 29, 2016, for all other Qualified Bidders, the Debtors shall make adequate assurance materials as described in paragraph 28 above available for inspection by counter-parties to leases and contracts to be assumed in an online data room, provided that such counter-parties execute a non-disclosure and confidentiality agreement in a form reasonably agreed to by the parties with respect to such materials.

30.   In accordance with the Bidding Procedures, Qualified Bidders and Potential Bidders must submit Qualified Bids to the Debtors by no later than, November 28, 2016, 5:00 p.m. prevailing Eastern Time.

31.   Any objection to (a) the Sale or (b) the proposed assumption and rejection of executory contracts and unexpired leases (other than on the basis of adequate assurance of future performance) shall be filed by November 28, 2016 at 5:00 p.m. (prevailing Eastern Time).  Any objection to the proposed assumption and assignment of executory contracts or unexpired leases including with respect to proposed cure costs or on the basis of adequate assurance of future performance shall be filed by December 6, 2016 at 5:00 p.m. (prevailing Eastern Time).

10

32.     The provisions of Bankruptcy Rules 6004(h) and 6006(d) staying the effectiveness of this Bidding Procedures Order, to the extent applicable, are hereby waived and this Bidding Procedures Order shall be effective immediately upon entry.

33.     The Debtors are directed to conduct the Auction in accordance with the terms of the Bidding Procedures on November 30, 2016, 10:00 a.m. prevailing Eastern Time unless an Auction is not required or the date is otherwise changed in accordance with the Bidding Procedures.

34.     As soon as practicable after the conclusion of the Auction, the Debtors are directed to serve the Winning Bidder Notice on parties entitled to notice in accordance with Bankruptcy Rule 2002 except as may be otherwise limited by Court Order. With respect to the following landlords, 294 Washington Owner LLC, 55 Broad Street L.P., Brixmor Property Group, Inc., PGIM Real Estate, The Trustees of the University of Pennsylvania, 53 State Street Lessee, LLC, W/S Wareham Properties, LLC, Route 140 School Street LLC, East Office Operating Limited Partnership, and 125 High Street, L.P. (the "Objecting Landlords"), the Debtors are directed to send an e-mail to counsel of record for the Objecting Landlords immediately after the conclusion of the Auction to inform the Objecting Landlords of the identity of the Successful Bidder. If any other landlords request the same notice and provide e-mail contact information to Debtors' counsel prior to the Auction, the Debtors are directed to provide similar notice.

35.     Unless notified by the Debtors as contemplated in the Winning Bidder Notice, this Court will hold a hearing on December 7, 2016 at 2:00 p.m. to address any disputes related to the Auction.

11

36.    The Sale Hearing shall be held on December 8, 2016 at 10:00 a.m. (prevailing Eastern Time).

37.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order in accordance with the Sale Motion.

38.    The appointment of a consumer privacy ombudsman pursuant to Bankruptcy Code §§ 332 and 363(b)(1)(B) is not required.

39.    This Court shall retain jurisdiction over the parties to the proposed sale with respect to any matters related to or arising under this Bidding Procedures Order.

Date  October 24, 2016                    _____
                                          Honorable Melvin S. Hoffman
                                          Chief United States Bankruptcy Judge

12

## Schedule 1
## To Order Establishing Bidding Procedures

### Bidding Procedures

On October 24, 2016, the United States Bankruptcy Court for the District of Massachusetts (the "Court") entered the *Order Establishing Bidding Procedures Relating to the Sale of All or a Portion of the Debtors' Assets* [Docket No.       ] (the "Bidding Procedures Order"),[1] by which the Court approved the procedures set forth the below. These Bidding Procedures set forth the process by which the Debtors are authorized to conduct an auction (the "Auction") for the sale (the "Sale") of all or substantially all of the Debtors' assets (the "Assets"). These Bidding Procedures are for the purposes of seeking and evaluating offers for the Assets, on the terms and provisions set forth herein, in addition to the bid contemplated by LIMAB LLC, an entity (including any assigns or designees thereof, the "Stalking Horse Bidder") affiliated with the Debtors' DIP Lenders (as defined below), as set forth in an asset purchase agreement dated as of October 18, 2016 among the Debtors and the Stalking Horse Bidder (the "Stalking Horse Agreement").

1.       **Submissions to the Debtors.**

All submissions to the Debtors required to be made under these Bidding Procedures must be directed to each of the following persons unless otherwise provided (collectively, the "Notice Parties"):

      A.       **Debtors.** Cosi, Inc., 294 Washington Street, Suite 510, Boston, MA 02108, Attn: Randy Kominsky, Chief Restructuring Officer (rkominsky@allianceffg.com).

      B.       **Debtors' Counsel.** Counsel to the Debtors, Mirick, O'Connell, DeMallie & Lougee, LLP, 1800 West Park Drive, Suite 400, Westborough, MA 01581-3926 ("Mirick O'Connell") Attn.: Joseph H. Baldiga (jbaldiga@mirickoconnell.com) and Christine E. Devine (cdevine@mirickoconnell.com);

      C.       **Committee Counsel.** Counsel to the official committee of unsecured creditors, Nixon Peabody LLP, 100 Summer Street, Boston, MA 02110, Attn: Lee Harrington (lharrington@nixonpeabody.com), Christopher Desiderio (cdesiderio@nixonpeabody.com), and Christopher Fong (cfong@nixonpeabody.com).

2.       **Potential Bidders**

To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity interested in consummating a Sale (a "Potential Bidder") must deliver or have previously delivered:

---

[1]    All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the *Debtors' Motion For (I) Order Establishing Bidding Procedures and Granting Related Relief and (II) Order Approving Sale of Substantially All Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests and Granting Related Relief* (the "Sale Motion") [Dkt. No. 105].

(i)    an executed confidentiality agreement on terms acceptable to the Debtors (a "<u>Confidentiality Agreement</u>"), to the extent not already executed; and

(ii)    to the extent determined to be necessary by the Debtors in their sole discretion, the most current audited and latest unaudited financial statements of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors and their advisors (the "<u>Financials</u>") (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, (x) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors and their advisors and (y) a written commitment acceptable to the Debtors and their advisors that the equity holder(s) of the Potential Bidder will be responsible for the Potential Bidder's obligations in connection with the Sale).

**3.    Qualified Bidders**

(a)    A "<u>Qualified Bidder</u>" is a Potential Bidder whose Financials, or the Financials of its equity holder(s), as applicable, demonstrate the financial capability to consummate the Sale and that the Debtors, after consulting with the Committee, determine should be considered a Qualified Bidder. Upon receipt by the Debtors of (i) the Confidentiality Agreement and (ii) the Financials, both in form and substance satisfactory to the Debtors and their advisors, the Debtors shall notify the person or entity that they are a Qualified Bidder and the Debtors will provide the Qualified Bidder with access to due diligence materials as discussed in Section 4 hereof. The Stalking Horse Bidder shall be deemed a Qualified Bidder at all times.

(b)    If any Bid by a Qualified Bidder is later determined by the Debtors, and after consultation with the Committee, not to be a Qualified Bid, the Debtors will refund such Qualified Bidder's Deposit on or within three business days after the Bid Deadline.

(c)    Between the date that the Debtors notify a Qualified Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Except as otherwise set forth in the Stalking Horse Agreement, without the written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or to otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided that* any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

2

**4.    Due Diligence.**

**No Qualified Bidder or Potential Bidder will be permitted to conduct any due diligence without entering into a Confidentiality Agreement.** The Debtors will provide to each Qualified Bidder or Potential Bidder reasonable due diligence information, as requested by such Qualified Bidder or Potential Bidder in writing, as soon as reasonably practicable after such request. For all Qualified Bidders or Potential Bidders, the due diligence period will end on the Bid Deadline and subsequent to the Bid Deadline the Debtors may (in consultation with the Committee and the Stalking Horse Bidder) furnish any due diligence information, but shall have no obligation to do so.

The Debtors shall not furnish any confidential information relating to the Assets, liabilities of the Debtors, or the Sale to any person except to a Qualified Bidder or Potential Bidder or to such Qualified Bidder's or Potential Bidder's duly authorized representatives to the extent provided in the applicable Confidentiality Agreement. The Debtors and their advisors shall coordinate all reasonable requests from Qualified Bidders or Potential Bidders for additional information and due diligence access; *provided that* the Debtors may decline to provide such information to Qualified Bidders or Potential Bidders who, at such time and in the Debtors' reasonable business judgment, after consultation with the Committee and the Stalking Horse Bidder, have not established, or who have raised doubt, that such Qualified Bidder or Potential Bidder intends in good faith to, or has the capacity to, consummate the Sale.

The Debtors also reserve the right to withhold or restrict access to any diligence materials that the Debtors determine are sensitive or otherwise not appropriate for disclosure to a Qualified Bidder or Potential Bidder who the Debtors determine is a competitor of the Debtors, is affiliated with any competitor of the Debtors or for whom the Debtors otherwise reasonably determine, in consultation with the Committee and the Stalking Horse Bidder, that making such information available to such Qualified Bidder or Potential Bidder may be harmful to the Debtors or the Debtors' business, including following any acquisition thereof by a Successful Bidder. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Qualified Bidder.

**All due diligence requests must be directed to:**

**Cosi, Inc., 294 Washington Street, Suite 510, Boston, MA 02108, Attn: Randy Kominsky, Chief Restructuring Officer (rkominsky@allianceffg.com); with a copy of all such requests simultaneously directed to:**

**Counsel to the Debtors, Mirick, O'Connell, 1800 West Park Drive, Suite 400, Westborough, MA 01581-3926, Attn.: Joseph H. Baldiga (jbaldiga@mirickoconnell.com) and Christine E. Devine (cdevine@mirickoconnell.com).**

**(a)    Communications with Qualified Bidders.**

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications between Qualified Bidders and the Debtors shall involve the Debtors and

3

the Debtors' advisors, to the extent reasonably practicable.

(b)    **Due Diligence from Qualified Bidders.**

Each bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of the Qualified Bidder to consummate the Sale.  Failure by a Qualified Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine, after consultation with the Committee, that such bidder is no longer a Qualified Bidder or that a bid made by such Qualified Bidder is not a Bid or a Qualified Bid.

Each recipient of confidential information agrees to use, and to instruct their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process.

Notwithstanding the foregoing and the provisions contained in any applicable confidentiality agreement, the Debtors and the Debtors' advisors may disclose confidential information: (i) with the prior written consent of such bidder and the Debtors; (ii) to the applicable bidder; and (iii) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

5.    **Bid Requirements.**

A proposal, solicitation, or offer (each, a "Bid") by a Qualified Bidder that is submitted in writing in the form of an asset purchase agreement (an "Asset Purchase Agreement") and satisfies each of the following requirements (the "Bid Requirements") as determined by the Debtors, in their reasonable business judgment, and after consultation with the Committee, shall constitute a "Qualified Bid").  The Stalking Horse Agreement executed by the Debtors and the transactions contemplated thereby will be deemed a Qualified Bid and the Stalking Horse Bidder will be deemed a Qualified Bidder for all purposes.

(a)    **Assets.**  Each Bid must be for all or substantially all of the assets of the Debtors and shall also clearly state which liabilities of the Debtors that the Qualified Bidders are agreeing to purchase and assume.  Piecemeal bids for only portions of the assets will not be accepted unless the Debtors determine, after consultation with the Committee and the DIP Lenders, that the DIP Payoff Condition (as set forth below) would be satisfied.

(b)    **Purchase Price.**  Each Bid must clearly set forth the purchase price to be paid for the Assets, including and identifying separately any cash and non-cash components, which non-cash components may include, among other things, the assumption of liabilities of the Debtors or credit-bids permitted by, and in accordance with, Section 6 hereof (the "Purchase Price"); provided that the cash consideration will be sufficient to fund payment of (i) the DIP Payoff Condition (as defined below) and (ii) the Bid Protections (as defined below).

4

**(c)**      **Minimum Bid.**  The aggregate consideration proposed by each Bid must equal or exceed the sum of, $10,740,000 in cash (the "Minimum Overbid"), subject to modification as set forth in the following two sentences.  A component of the Minimum Overbid consists of all obligations under the Debtors' debtor in possession financing facility, including principal, interest, fees, expenses and other obligations ("DIP Obligations"), all of which will be required to be repaid at Closing, and the Minimum Overbid stated in the previous sentence assumes that the aggregate DIP Obligations are $4,100,000 (i.e. the maximum commitment on the date hereof under the DIP Facility).  The amount of the DIP Obligations may increase by agreement of the parties subject to approval of the Court.  One business day before Auction, the Debtors (in consultation with the Committee and the DIP Lenders) will provide notice of the estimated actual amount of the DIP Obligations as of the prospective closing date, and the Minimum Overbid will be adjusted upward or downward dollar for dollar to reflect deviations from $4,100,000 in the principal amount estimated to be outstanding under the DIP Facility immediately prior to Closing.

**(d)**      **Deposit.**  Each Bid, other than the Bid of the Stalking Horse Bidder (the "Stalking Horse Bid"), must be accompanied by a cash deposit in the amount equal to $1,000,000 to be held in a separate account to be identified and established by the Debtors (the "Deposit").

**(e)**      **Assumption of Obligations; DIP Payoff Condition.**  Each Bid must provide for the payment in full in cash of the DIP Facility, including all DIP Obligations, no later than the earlier of (i) the closing of the Sale (the "Closing") or the closing of any sale of any part of the Assets; and (ii) December 14, 2016 (the "DIP Payoff Condition").

**(f)**      **The Same or Better Terms.**  Each Bid must be on terms that are not more burdensome to the Debtors or conditional, have less recourse against the purchaser for breach, or have other provisions that are materially more favorable to the purchaser, than the terms of the Stalking Horse Agreement as determined by the Debtors in consultation with the Committee and the Stalking Horse Bidder. Each Bid must include non-contingent transaction documents necessary to effectuate the transactions contemplated in the Bid and shall include a schedule of assumed contracts to the extent applicable to the Bid, and a copy of the Stalking Horse Agreement, clearly marked to show all corresponding changes requested by the Qualified Bidder in their Asset Purchase Agreement, including those related to the respective Purchase Price and assets to be acquired by such Qualified Bidder, as well as all other material documents integral to such bid (the "Qualified Bid Documents").  Upon the request of a Qualified Bidder, the Debtors will provide a copy of the Stalking Horse Agreement as a Word document.

**(g)**      **Committed Financing.**  To the extent that a Bid is not accompanied by evidence of the Qualified Bidder's capacity to consummate the sale set forth in its Bid with cash on hand, each Bid must include evidence of financing documented to the

5

satisfaction of the Debtors, and after consultation with the Committee, that demonstrates that the Qualified Bidder has received sufficient debt and/or equity funding commitments to satisfy the Qualified Bidder's Purchase Price and other obligations under its Bid including adequate assurance of future performance.

(h)   **Contingencies; No Financing or Diligence Outs.** A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties, which shall not be more burdensome, in the Debtors' business judgment, and after consultation with the Committee, than those set forth in the Stalking Horse Agreement.

(i)   **Identity.** Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Qualified Bidder if such Qualified Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by such Bid). Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid. Each Bid must also include contact information for the specific persons and counsel whom the Debtors and Mirick O'Connell should contact regarding such Bid.

(j)   **Demonstrated Financial Capacity.** A Qualified Bidder must have, in the Debtors' business judgment, and after consultation with the Committee, the necessary financial capacity to consummate the proposed transactions required by its Bid and provide adequate assurance of future performance under all contracts proposed to be assumed by such Bid.

(k)   **Time Frame for Closing.** A Bid by a Qualified Bidder must be reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors, after consultation with the Committee, and, in any event, on or prior to December 14, 2016 unless such Qualified Bidder consummates the DIP Payoff Condition and agrees to provide financing to the Debtors during the time necessary to close the transaction.

(l)   **Binding and Irrevocable.** A Qualified Bidder's Bid shall be irrevocable unless and until the Debtors accept a higher Bid.

(m)  **Expenses; Disclaimer of Fees.** Each Bid (other than a Stalking Horse Bid) must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Qualified Bidder (other than the Stalking Horse Bidder) will be permitted to request, nor be granted by the Debtors, at any time,

6

whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

(n)    **Authorization.** Each Bid must contain evidence that the Qualified Bidder has obtained authorization or approval from its board of directors (or a comparable governing body) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

(o)    **As-Is, Where-Is.** Each Bid must include a written acknowledgement and representation that the Qualified Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction.

(p)    **Adherence to Bid Procedures.** By submitting its Bid, each Qualified Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

(q)    **Regulatory Approvals and Covenants.** A Bid must set forth each regulatory and third-party approval required for the Qualified Bidder to consummate the Sale, if any, and the time period within which the Qualified Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than (10) days following execution and delivery of the Asset Purchase Agreement giving effect to such Bid, those actions the Qualified Bidder will take to ensure receipt of such approvals as promptly as possible).

(r)    **Consent to Jurisdiction.** The Qualified Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of bids, the Auction, the construction and enforcement of these Bidding Procedures, the Sale documents, and the Closing, as applicable.

(s)    **Bid Deadline.** Each Bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** on or before November 28, 2016 at 5:00 p.m. (prevailing Eastern Time) (the "Bid Deadline") by:

    (i)    The Debtors: Cosi Inc., 294 Washington Street, Suite 510, Boston, MA 02108, Attn: Randy Kominsky, Chief Restructuring Officer

7

(rkominsky@allianceffg.com);

(ii)   Counsel to the Debtors: Mirick, O'Connell, DeMallie & Lougee, LLP, 1800 West Park Drive, Suite 400, Westborough, MA 01581-3926 Attn.: Joseph H. Baldiga (jbaldiga@mirickoconnell.com) and Christine E. Devine (cdevine@mirickoconnell.com); and

(iii)   Counsel to the official committee of unsecured creditors, Nixon Peabody LLP, 100 Summer Street, Boston, MA 02110, Attn: Lee Harrington (lharrington@nixonpeabody.com), Christopher Desiderio (cdesiderio@nixonpeabody.com), and Christopher Fong (cfong@nixonpeabody.com).

**6.   Right to Credit Bid.**

At the Auction, the lenders under the Debtors' debtor-in-possession financing facility (the "DIP Facility" and the lenders thereunder, the "DIP Lenders") shall have the right to credit bid (on their own behalf, or on behalf of any purchaser, including the Stalking Horse Bidder) all or a portion of the value of such DIP Lender's claims (which, for the avoidance of doubt, with respect to the DIP Lenders, shall include the outstanding amounts, including principal, interest, fees, expenses and other obligations under the DIP Facility) within the meaning of section 363(k) of the Bankruptcy Code.  For purposes of the Auction, the amount of the credit bid shall be the estimated amount of the DIP Obligations as of the date of the Auction as determined by the Debtors in consultation with the Committee and the DIP Lenders (the "DIP Credit Bid Auction Amount"); provided that if the Stalking Horse Bidder is the Successful Bidder, it will be entitled to credit bid the full amount of the actual DIP Obligations against the purchase price at closing with a corresponding adjustment to the cash portion of the purchase price to the extent that the actual DIP Obligations at closing exceed the DIP Credit Bid Auction Amount.  Notwithstanding anything herein to the contrary, the Stalking Horse Bidder shall be permitted to add at each level of bidding the amount of $640,000 (i.e. the value of the Bid Protections) to the Stalking Horse Bidder's then current bid for purposes of evaluating the "highest and best" current bid and such amount shall be treated as cash consideration in the event that the Stalking Horse Bidder is the Successful Bidder.  For the avoidance of doubt, except the credit bid rights of the DIP Lenders and the right of the Stalking Horse Bidder to include the Bid Protections in its bids as set forth above, no credit bids will be permitted.

**7.   Auction.**

If the Debtors receive one or more Qualified Bids for the Assets, other than the Stalking Horse Bid, the Debtors will conduct the Auction to determine the Successful Bidder for the Assets.  If the Debtors receive no Qualified Bids for the Assets (other than the Stalking Horse Bid), the Debtors will not conduct the Auction and shall designate the Stalking Horse Bidder's Bid as the Successful Bid for the Assets.

On the day following the Bid Deadline, at 5:00 p.m. (prevailing Eastern Time), the Debtors will (a) notify each Qualified Bidder of the highest or otherwise best Qualified Bid for

8

the Assets, as determined in the Debtors' reasonable business judgment, and after consultation with the Committee (the "Baseline Bid"), and (b) provide copies of the applicable Qualified Bid Documents supporting the applicable Baseline Bid to each Qualified Bidder, including the Stalking Horse Bidder.

The determination of which Qualified Bid constitutes the Baseline Bid shall require a determination that the bid criteria set forth in Section 5 hereof have been satisfied in full (including that the DIP Payoff Condition will be satisfied in full) and shall also take into account any factors the Debtors, after consultation with the Committee, reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things: (a) the number, type, and nature of any changes to the Stalking Horse Agreement, if any, requested by the Qualified Bidder, including the obligations to be assumed in the Qualified Bid; (b) the amount and nature of the total consideration; (c) the anticipated amount of the DIP Obligations at the Closing taking into account the fact that the DIP Payoff Condition must be satisfied by any bidder other than the Stalking Horse Bidder and that the Stalking Horse Bidder will be entitled to credit bid the DIP Credit Bid Auction Amount and all other DIP Obligations at Closing; (d) the likelihood of the Qualified Bidder's ability to close the Sale and the timing thereof; (e) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents; (f) if required, the ability and willingness to provide any necessary financing through the Closing; and (g) the tax consequences of such Qualified Bid (collectively, the "Bid Assessment Criteria").

The Auction, if any, shall take place at 10:00 a.m. (prevailing Eastern Time) on November 30, 2016, at the offices of Mirick, O'Connell, DeMallie & Lougee, LLP, 175 Federal Street, Suite 1220, Boston, MA 02110, or such later date and time as reasonably selected by the Debtors. The Auction shall be conducted in a timely fashion according to the following procedures:

**(a)    The Debtors Shall Conduct the Auction.**

The Debtors and their professionals shall direct and preside over the Auction, and shall retain discretion to modify these procedures (subject to Section 9 of these procedures) if, after consultation with the Committee, it is determined to be in the best interest of the estates and their creditors. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid. All incremental Bids made thereafter shall be Overbids and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders who submitted Bids. The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all applicable Overbids, and the Successful Bid.

Only Qualified Bidders and their legal and financial advisors, and the Committee, the DIP Lenders, the United States Trustee, and each such parties' respective legal and financial advisors shall be entitled to attend the Auction, and the Qualified Bidders shall appear at the Auction in person and may speak or bid themselves or through duly authorized representatives. Only Qualified Bidders shall be entitled to bid at the Auction.

(b)    **Terms of Overbids.**

"Overbid" means any bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid. Each applicable Overbid must comply with the following conditions:

(i)    **Overbid Increments.** The initial Overbid for the Assets, shall provide for total consideration to the Debtors with a value that exceeds the value of the consideration under the Baseline Bid by an incremental amount that is not less than the sum of $100,000 (the "Initial Overbid Increment") *plus*, the aggregate amount of any Bid Protections under the Stalking Horse Agreement, and each successive applicable Overbid for the Assets shall exceed the then-existing Overbid by an incremental amount that is not less than $50,000 (the "Overbid Increment"). The Debtors reserve the right, after consultation with the Committee and the Stalking Horse Bidder, to announce reductions or increases in the Overbid Increment at any time during the Auction, other than the Initial Overbid Increment which shall not be changed without the consent of the Stalking Horse Bidder. Additional consideration in excess of the amount set forth in the respective Baseline Bid must be in cash.

(ii)    **Conclusion of Each Overbid Round.** Upon the solicitation of each round of applicable Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment, and after consultation with the Committee, extend from time to time, (the "Overbid Round Deadline") by which time any Overbids must be submitted to the Debtors. The Debtors, in consultation with the Committee, may (but shall have no obligation to) consult with Bidders between each Over Bid Round in order to seek improvements, enhancements, or clarifications of any Bid, with any such improvements, enhancements or clarifications to be disclosed to other Qualified Bidders.

(iii)    **Overbid Alterations.** An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Bid or Overbid, as determined in the Debtors' reasonable business judgment, and after consultation with the Committee, but shall otherwise comply with the terms of these Bidding Procedures.

(iv)    **Announcing Highest Bid.** Subsequent to each Overbid Round Deadline, the Debtors, after consultation with the Committee, shall announce whether the Debtors have identified in the initial applicable Overbid round, an Overbid as being higher or otherwise better than the Baseline Bid, or in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid for the Assets (the "Prevailing Highest Bid"). The Debtors shall describe to all Qualified

10

Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid as well as the value attributable by the Debtors to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

**(c)      Closing the Auction.**

(i)     The Auction shall continue until there is only one Bid that the Debtors determine, in their reasonable business judgment, and after consultation with the Committee, to be the highest or otherwise best Bid for the Assets. Such Bid shall be declared the "Successful Bid," and such Qualified Bidder, the "Successful Bidder".

(ii)    After determining the Successful Bid and the Successful Bidder, the Debtors will also determine, in their reasonable business judgment, and after consultation with the Committee, the Bid which is the second highest or otherwise best Bid for the Assets. Such Bid shall be declared the "Backup Successful Bid," and such Qualified Bidder, the "Backup Successful Bidder" at which point the Auction will be closed. Only the Stalking Horse Bidder may decline in its sole discretion to serve as the Backup Successful Bidder.

(iii)   The Debtors shall not consider any Bids or Overbids submitted after the conclusion of the Auction, and any such Bids or Overbids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

(iv)    As soon as reasonably practicable after closing the Auction, the Debtors shall cause the Qualified Bid Documents for the Successful Bidder and the Backup Successful Bidder to be filed with the Court.

**(e)      No Collusion; Good-Faith *Bona Fide* Offer.**

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that:  (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Bid is a good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

**8.      Highest or Otherwise Best Bid.**

When determining the highest or otherwise best Bid, as compared to other Bids, the Debtors may consider the following factors in addition to any other factors that the Debtors, and after consultation with the Committee, deem appropriate and in the best interest of the estates and their creditors:  (a) the number, type, and nature of any changes to the Stalking Horse Agreement requested by the Qualified Bidder; (b) the amount and nature of the total consideration; (c) the likelihood of the Qualified Bidder's ability to close a transaction and the

11

timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents; (e) the effect from a Bid on the value to the estate and to the estate's constituents of claims held by any Qualified Bidder (including claims asserted by the Stalking Horse Bidder); and (f) the tax consequences to the Debtors' estates of such Bid.

## 9.    Reservation of Rights.

The Debtors reserve their rights to modify these Bidding Procedures in their reasonable business judgment, and after consultation with the Committee, in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Assets, including, without limitation: (a) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (b) canceling the Auction; and (c) rejecting any or all bids or Bids (other than the Stalking Horse Bid).

Notwithstanding anything in these Bidding Procedures or the Bidding Procedures Order to the contrary, the following provisions of these Bidding Procedures shall not be amended or modified without the consent of the Stalking Horse Bidder: (A) any Bid Protections in favor of the Stalking Horse Bidder; (B) the following Bid Requirements: Section 5(c) (Minimum Bid), 5(d) (Deposit), 5(e) (Assumption of Obligations), 5(f) (the Same or Better Terms), 5(e) (Committed Financing, DIP Payoff Condition) 5(h) (Contingencies; No Financing or Diligence Outs), 5(l) (Binding and Irrevocable), 5(o) (As-Is, Where-Is), 5(s) (Bid Deadline); (C) the requirements of the Initial Overbid Increment contemplated by Section 7(b)(i) hereof; (D) the Right to Credit Bid; (E) any consultation rights of the Stalking Horse Bidder and the rights of the Stalking Horse Bidder set forth in Section 12; and (F) adjourning or delaying the date of the Auction past December 2, 2016. In addition, no other provision of these Bidding Procedures shall be amended, altered or modified in any material manner without the consent of the Stalking Horse Bidder, which consent may not be unreasonably withheld, conditioned or delayed.

## 10.    Consent to Jurisdiction.

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bidding Procedures, and/or the Qualified Bid Documents, as applicable.

## 11.    Sale Hearing.

A hearing to consider approval of the Sale of the Assets to the Successful Bidder (or to approve the Stalking Horse Agreement, as applicable, if no Auction is held) (the "Sale Hearing") is currently scheduled to take place on or before December 8, 2016, at 10:00 a.m. (prevailing Eastern Time), before the Honorable Melvin S. Hoffman, at the Bankruptcy Court for the Eastern District of Massachusetts, Room 2, John W. McCormack Post Office and Court House, 5 Post Office Square, Suite 1150, Boston, MA 02109-3945. At the Sale Hearing, the Debtors shall present the Successful Bid to the Court for approval.

12

**12.    Stalking Horse Agreement and Stalking Horse Rights.**

The Debtors shall attach to the Notice of Sale either (i) the Stalking Horse Agreement or (ii) a summary of the significant terms of the Stalking Horse Agreement (the "Stalking Horse Notice") and will serve the Notice of Sale on all parties entitled to notice under Rule 2002 of the Bankruptcy Rules except as may be otherwise limited by Court Order which will include, among others, all parties expressing interest in the Assets and all parties holding liens on the Assets. If the Debtors, after consultation with the Committee, elect to attached the Stalking Horse Notice to the Notice of Sale, that Stalking Horse Notice will include: (a) the identity of the proposed Stalking Horse Bidder; (b) a summary of the key terms of the Stalking Horse Agreement; and (c) the Bid Protections. If the Debtors, after consultation with the Committee, elect to attached the Stalking Horse Notice to the Notice of Sale, then, at least three (3) days prior to the Auction, the Debtors shall distribute complete and correct copies of the Stalking Horse Agreement to each of the other Qualified Bidders.

To provide an incentive and to compensate any Stalking Horse Bidders for performing the substantial due diligence and incurring the expenses necessary and entering into a Stalking Horse Agreement with the knowledge and risk that arises from participating in the sale and subsequent bidding process, the Debtors shall, pay the Stalking Horse Bidder (a) a break-up fee in the amount of $315,000 (the "Breakup Fee"), and (b) reimbursement of expenses incurred by the Stalking Horse Bidder in an amount not to exceed $325,000 (the "Expense Reimbursement Fee" and together with the Breakup Fee, the "Bid Protections"), both payable at Closing (or upon the closing of a sale of any material portion of the Assets) and in the event that the Stalking Horse Agreement is terminated due to (i) the Debtors closing or entering into an agreement for any alternative transaction with any person other than the Striking Horse Bidder,(ii) the Debtor declaring another Bidder to be the Successful Bidder, or (iii) making any filing or taking any other action materially inconsistent with the Sale to the Stalking Horse Bidder. The Bid Protections will be an allowed administrative expense priority claim against the Debtors pursuant to sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

The Stalking Horse Bidder shall have standing to appear and be heard on all issues related to the Auction, the Sale, and related matters, including the right to object to the sale of the Assets or any portion thereof (including the conduct of the Auction and interpretation of these Bidding Procedures).

**13.    No Modification of Bidding Procedures.**

Except as provided by Section 9 hereof, these Bidding Procedures may not be modified.

**14.    Return of Deposit.**

The Deposit of the Successful Bidder shall be applied to the respective Purchase Price of such transaction at closing. The Deposits for each Qualified Bidder shall be held in a non-interest bearing IOLTA account and shall be returned (other than with respect to the Successful Bidder and the Backup Successful Bidder) on or within three business days after the Auction.

Client Matter/27288/2/A3499312.DOCX[Ver:2]

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the Deposit deposited by such Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the proposed transaction with the any other Qualified Bidder without the need for an additional hearing or order of the Court. The Debtors shall be entitled to close the Sale with the Backup Successful Bidder. The Deposit for the Backup Successful Bidder shall be returned on or within three business days after the closing of the transaction with the Successful Bidder.

14