**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Chapter 11<br>Case Nos. 16-13704-MSH<br>Through 16-13708 |
| COSI, INC., et al., | ) ) | (Jointly Administered) |
| Debtors | ) | |

**MEMORANDUM OF DECISION ON REQUEST OF ROBERT J. DOURNEY FOR ALLOWANCE AND PAYMENT OF ADMINSTRATIVE EXPENSE CLAIM**

Robert J. Dourney has applied for payment of not less than $261,613.56 as a priority expense of administration in this case pursuant to Bankruptcy Code § 503(b)(1).[1] He seeks severance pay based on his post-bankruptcy compliance with certain pre-bankruptcy agreements with Cosi, Inc., the lead debtor in this case. The reorganized Cosi and its affiliates (which for ease of reference will be referred to simply as "Cosi") and Craig A. Jalbert, the liquidating trustee under Cosi's confirmed plan or reorganization, each filed objections to Mr. Dourney's request. For the reasons discussed below, Mr. Dourney's motion must be denied.

<u>Background</u>

On March 17, 2014, Cosi, a "fast-casual" restaurant chain headquartered in Boston, hired Mr. Dourney as its president and chief operating officer. They entered into three agreements: an Employment Agreement, a Confidentiality and Non-Compete Agreement and a Restricted Stock Agreement. The Employment Agreement provided for severance pay to Mr. Dourney in the event his employment was terminated by Cosi without cause. The severance payment amount was not tied to length of service with an exception, not relevant here, for termination during the

---

[1] All references to the Bankruptcy Code or the Code are to 11 U.S.C. § 101 *et seq*.

first year of employment. As is typical, Mr. Dourney's right to receive severance payments was conditioned on his compliance with the Non-Compete Agreement.

On August 22, 2016, Cosi terminated Mr. Dourney's employment without cause, triggering Mr. Dourney's right to severance payments under the Employment Agreement. Immediately following his termination, Cosi sent Mr. Dourney a letter reminding him that he remained bound by the Non-Compete Agreement.

Mr. Dourney had received only four severance payments when on September 28, 2016, Cosi filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing this case. At that point Cosi ceased payments to Mr. Dourney. In its schedules of liabilities filed in support of its bankruptcy petition, Cosi listed Mr. Dourney as the holder of an undisputed general unsecured claim for severance pay in the amount of $383,077. Mr. Dourney, who was appointed the chairman of the unsecured creditors' committee in this case, does not dispute the amount of his scheduled claim, but requests that not less than $261,613.56 of the claim, representing the pro-rated amount for the period from the bankruptcy commencement date to the effective date of Cosi's plan of reorganization, be treated as a priority expense of administration under Code § 503(b)(1).

## Jurisdiction

Mr. Dourney's claim is for an administrative expense, a claim that is uniquely a creature of the Bankruptcy Code. As it arises under the Code, jurisdiction to determine such a claim resides in the bankruptcy court by referral from the district court pursuant to 28 U.S.C. §§ 1334(b) and 157(a). In addition, should Mr. Dourney's claim be allowed, a significant percentage (approximately 37%) of the claim will be payable from funds

earmarked in Cosi's confirmed plan for payment to creditors.[2] A payment to Mr. Dourney will reduce the cash available to pay other creditors and thus his claim relates directly to the outcome of this case—another source of bankruptcy court jurisdiction under 28 U.S.C. §§ 1334(b) and 157(a).

## The Dispute

Mr. Dourney maintains that he is entitled to an administrative claim pursuant to Bankruptcy Code § 503(b)(1) for "the actual and necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." Relying on an April 24, 2017 affidavit of David Polonitza, the executive vice president of LIMAB, a secured creditor and plan proponent, filed in this case, Mr. Dourney argues that his post-petition compliance with the Non-Compete Agreement, including his not disclosing Cosi's weaknesses and not hiring away valued Cosi employees, conferred a demonstrable benefit on the bankruptcy estate. He notes that under his Employment Agreement his right to receive severance pay was contingent upon his complying with the Non-Compete Agreement and that under Delaware law (which governs the agreements) "contemporaneous contracts between the same parties concerning the same subject matter should be read together as one contract." *Comerica Bank v. Glob. Payments Direct, Inc.*, No. CIV.A. 9707-CB, 2014 WL 3567610, at *7 (Del. Ch. July 21, 2014).

In quantifying the benefit he conferred on the bankruptcy estate as reflected in his claim, Mr. Dourney seeks severance pay as called for in the Employment Agreement, pro-rated from the date of Cosi's bankruptcy filing through the effective date of its reorganization plan.

---

[2] Under the confirmed plan, the remaining percentage will be payable from non-bankruptcy estate assets.

3

Alternatively, he suggests that he may be entitled to an even greater amount on a *quantum meruit* basis for the benefit he conferred upon the bankruptcy estate by complying with the Non-Compete Agreement.

The reorganized Cosi and the liquidating trustee dispute that Mr. Dourney provided any benefit to Cosi post-petition and on this basis object to his request for administrative claim status. The reorganized Cosi also raises a number of additional objections, including that Mr. Dourney breached the Non-Compete Agreement and thus forfeited any right to severance pay and may in fact owe the estate damages, that the Non-Compete Agreement was rejected by Cosi pursuant to Bankruptcy Code § 365 and thus cannot give rise to a post-petition claim, and that even if the Non-Compete Agreement had been assumed, it is a contract separate from the Employment Agreement, does not provide for payment of severance, and therefore does not give rise to any "cure costs" under § 365.

Discussion

The parties have devoted considerable effort debating whether the Employment Agreement and Non-Compete Agreement should be treated as a unitary contract and how assumption or rejection affects Mr. Dourney's claim. It is not necessary for me to delve into these controversies, however, because even if I adopted Mr. Dourney's view that the contracts are unitary, that the Non-Compete Agreement was not rejected and that he did not breach the agreement, his claim would still not qualify as a § 503(b) expense of administration.

Section 503 of the Bankruptcy Code states in relevant part:

(a) An entity may timely file a request for payment of an administrative expense, or may tardily file such a request if permitted by the court for cause.
(b) After notice and a hearing, there shall be allowed administrative expenses, . . . including—
    (1)(A) the actual, necessary costs and expenses of preserving the estate including—

> (i) wages, salaries and commissions for services rendered after the commencement of the case.

Bankruptcy Code § 503(b)(1)(A) has been described as:

[A] means of enabling the debtor estate to acquire the requisite postpetition credit with which to preserve itself after the filing of the petition. Preservation of the estate includes protection of the assets of the estate, as well as postpetition operation of the business of the debtor.

*Woburn Assocs. v. Kahn (In re Hemingway Transp.)*, 954 F.2d 1, 5 (1st Cir. 1996). The burden of proving entitlement to an administrative expense is on the party seeking such treatment. *Id.* The standard is one of a preponderance of the evidence. *Tippens Bank and Tr. v. Jarriel (In re Jarriel)*, 518 B.R. 140, 146 (Bankr. S.D. Ga. 2014). Bankruptcy Code § 503(b) must be strictly construed as it alters "[t]he traditional presumption favoring ratable distribution among all holders of unsecured claims." *Hemingway Transp.,* 954 F.2d at 4-5.

A claim may qualify as an administrative expense pursuant to Bankruptcy Code § 503(b) if (1) the right to payment arose from a post-petition transaction with the debtor's estate, rather than from a pre-petition transaction with the debtor, and (2) the consideration supporting the right to payment was beneficial to the estate. *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.),* 536 F.2d 950, 954 (1st Cir. 1976). "A right to payment predicated on an executed prepetition contract is not entitled to priority payment as an administrative expense." *Hemingway Transp.*, 954 F.2d at 5 n.4 (citing *Mammoth Mart,* 536 F.2d at 954).

In the First Circuit, no analysis of the administrative expense status of an executive's severance pay claim can be complete without considering the Court of Appeals' decision in *Mason v. Official Comm. of Unsecured Creditors (In re FBI Distribution Corp.)*, 330 F.3d 36 (1st Cir. 2003). In 1999, Ms. Mason left her executive position with another retail company to become president and head of merchandising for the Filene's Basement Division of the

financially-troubled Filene's Basement, Inc. Ms. Mason and Filene's executed both an employment agreement, which called for her to receive three years' salary and other perquisites if she was terminated without cause, and a retention agreement, which provided she would receive three years' salary plus perks if her employment was terminated following a change of control of the company. Three months after Ms. Mason took the helm, Filene's and its parent company filed chapter 11 petitions. Ms. Mason continued her employment but three months into the case, she was placed on leave with pay, pending Filene's rejection of her employment and retention contracts. In the interim Filene's assets were sold to a third party. Following the sale, the bankruptcy court allowed the motion to reject Ms. Mason's employment contract but held that the retention agreement was not executory and thus not subject to rejection. Ms. Mason then sought an administrative claim for her severance pay under both agreements. The bankruptcy court denied her request. On appeal, the United States District Court for the District of Massachusetts and the Court of Appeals for the First Circuit each affirmed.

In rejecting Mason's argument that the consideration supporting her administrative expense claim was her status as an employee in good standing of the chapter 11 debtor at the time of her termination, the First Circuit established a clear distinction between severance and vacation benefits geared to an employee's length of service, which could qualify for administrative expense status if the employee worked post-petition, with severance benefits such as those claimed by Ms. Mason that were not tied to compensation for services rendered. The court held that the consideration supporting Mason's severance claim was provided pre-petition at the moment she signed her employment agreement which is when she agreed to forego pursuing other employment opportunities.

6

Here Mr. Dourney's right to severance payments are also untethered from his length of service. His right to severance arose from the pre-petition Employment Agreement, the consideration for which was delivered at the time the agreement was executed. Similarly, his obligations under the Non-Compete Agreement arose pre-petition, even if they carried over to the post-petition period. Based on the holding in *FBI*, Mr. Dourney has no administrative expense claim for severance pay but rather is left with a general unsecured claim.

Mr. Dourney fares no better using his fall-back *quantum meruit* argument. The *sine qua non* of an administrative expense claim is the rendering of a service or the conferring of a benefit. Bankruptcy Code § 503(b)(1)(A)(i); *Mammoth Mart*, 536 F.2d at 955. Mr. Dourney bases his claim on the fact that his complying with the Non-Compete Agreement conferred a benefit on the bankruptcy estate. Not harming the estate, as in not violating a non-competition agreement, however, is not the same as rendering a service or conferring a benefit. The failure to cause harm is not the legal equivalent of conferring a benefit. Wendy J. Gordon, *Of Harms and Benefits: Torts, Restitution, and Intellectual Property*, XXI J. of Legal Studies 449, 457 (June 1992) ("Perhaps most important, paying people to refrain from doing harm is likely to encourage precisely the wrong sort of behavior. . . . A right to payment for harm avoidance would give an incentive for extortion.") Mr. Dourney's abiding post-petition by the terms of the Non-Compete Agreement does not qualify as a service or benefit for purposes of § 503(b)(1)(A). *In re WorldCom, Inc.*, 308 B.R. 157, 167–69 (Bankr. S.D.N.Y. 2004) ("Only the performance of a service gives effect to the statute's purpose which is to encourage third parties to continue providing goods and services necessary for a successful reorganization. . . Compliance with a non-solicitation covenant is not a 'service' but merely a condition subsequent under the contract that if not complied with would, *inter alia,* be a 'defense' to payment of the commissions.").

Recently in *In re New WEI, Inc.*, 15-12741-TOM-7, 2018 WL 1115200 (N.D. Ala. Feb. 26, 2018), the court considered a claim similar to Mr. Dourney's. Walter Energy, Inc. hired Thomas Lynch as a senior vice president pursuant to an employment agreement that included a non-competition and non-disparagement provision. The company filed bankruptcy and shortly thereafter terminated Mr. Lynch's employment without cause. Mr. Lynch asked the bankruptcy court to award him an administrative expense claim under § 503(b)(1)(A) based on his post-petition compliance with the non-competition and non-disparagement provisions of his employment contract. In rejecting Mr. Lynch's claim, the court noted that "[p]roviding a potential benefit to a debtor's estate does not arise [sic] to the level of benefit that is 'actual and necessary.'" *Id.* at *5 (internal citations omitted). The benefit provided to the estate must be "the type of concrete, actual benefit contemplated by § 503(b)(1)(A)." *In re Hopkinton Independent School Inc.*, 499 B.R. 158, 162 (Bankr. D.N.H. 2013) (quoting *Ford Motor Co. v. Dobbins*, 35 F.3d 860, 866-67 (4th Cir. 1994)).

I agree with the reasoning in *WEI* and *WorldCom*. A party's continuing to abide, post-petition, by an agreement not to compete with a debtor is not the kind of benefit or service contemplated by Code §503(b)(1)(A) as entitled to administrative priority.

Conclusion

Having failed to establish that post-petition he conferred a benefit on or rendered a service to the debtor or the bankruptcy estate, Mr. Dourney's request for allowance and payment of an administrative expense claim must be denied.

A separate order shall issue.

At Boston, Massachusetts this 28th day of June, 2018.

By the Court,

_____
Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:  William R. Moorman, Esq.
Partridge, Snow & Hahn, LLP
Boston, MA
    for Robert J. Dourney

Sharon I. Dwoskin, Esq.
Brown Rudnick LLP
Boston, MA
    for Cosi, Inc, *et al.*, the reorganized debtors

Lee Harrington, Esq.
Nixon Peabody LLP
Boston, MA
    for Craig A. Jalbert, Liquidating Trustee